**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| TRANSCARENT, INC.,<br><br>Plaintiff,<br><br>v.<br><br>ERIN JONES and GARNER HEALTH TECHNOLOGY, INC.,<br><br>Defendants. | Case No. 1:26-cv-12748<br><br>Judge ____________________ |

**PLAINTIFF TRANSCARENT, INC.'S COMPLAINT AND REQUEST FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF**

Plaintiff Transcarent, Inc. ("Transcarent"), by and through its undersigned counsel, hereby files this Complaint and Request for Preliminary and Permanent Injunctive Relief against Defendants Erin Jones ("Jones") and Garner Health Technology, Inc. ("Garner" and, together with Jones, "Defendants"), and alleges as follows:

## <u>INTRODUCTION</u>

1. Transcarent brings this action to stop Defendants' willful and unlawful misappropriation of its trade secrets and confidential and proprietary information, to recover the damages Defendants' conduct has caused, and to obtain preliminary and permanent injunctive relief to prevent further irreparable harm.

2. Transcarent is a health-and-care experience company that partners with employers, health plans, health systems, labor unions, and consultants to improve the experience, quality, and affordability of care for their employees and families. Transcarent brings together medical, pharmacy, and point solutions in a generative AI-powered personalized platform, offering

solutions relating to weight and cardiometabolic health, musculoskeletal health, surgery care, specialty care, and care navigation.

3. Transcarent hired Jones in March 2023 as a Product Marketing Manager. To enable Jones to perform that role, Transcarent entrusted her with access to its confidential commercial strategies, pricing, customer information, and prospective client pursuits.

4. As a condition of her employment, Jones executed an Employee Confidentiality, Proprietary Information, and Inventions Agreement (the "Confidentiality Agreement"), in which she agreed, among other things, to hold Transcarent's confidential information in the strictest confidence, not to use it except for Transcarent's benefit, and to return all Transcarent documents and data when her employment ended. A true and correct copy of the Confidentiality Agreement is attached hereto as ***Exhibit A***.

5. Jones disregarded these obligations and breached Transcarent's trust. In the days after she gave notice of her resignation, but before her last day of employment at Transcarent, Jones downloaded at least twenty-five unique files containing some of Transcarent's most confidential, proprietary, and highly sensitive business information—including its enterprise-wide price book, pricing proposals, member engagement strategy, current customer business reviews, and pitch materials prepared for large prospective clients that Transcarent is actively pursuing. Most of these files did not reside in Jones' own work folders and/or were not needed by her to perform her job; she pulled them from Transcarent's secured SharePoint sites and from the OneDrive accounts of numerous other Transcarent employees.

6. Jones resigned from employment with Transcarent on August 27, 2026, effective September 25, 2026. She began working for Garner, a direct competitor of Transcarent, the week after her employment with Transcarent ended.

7. With the confidential and proprietary information Jones improperly retained, Jones and Garner can unlawfully compete (and, on information and belief, are unlawfully competing) with Transcarent by undercutting its pricing, replicating its strategies, and targeting its current and prospective customers. Transcarent therefore brings this action to stop Defendants' unlawful conduct, recover its damages, and obtain preliminary and permanent injunctive relief.

**PARTIES, JURISDICTION, AND VENUE**

8. Plaintiff Transcarent, Inc. is a Delaware corporation with its principal place of business located at 444 N. Michigan Avenue, Suite 700, Chicago, Illinois.

9. Defendant Erin Jones is an individual residing at 1850 N. Clark Street, Unit 2508, Chicago, IL 60614.

10. Defendant Garner Health Technology, Inc. is a Delaware corporation with its principal place of business located at 521 Broadway, New York, New York.

11. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 because Transcarent asserts claims arising under the laws of the United States, namely the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836 et seq. ("DTSA"). This Court has supplemental jurisdiction over Transcarent's state law claims under 28 U.S.C. § 1367(a) because those claims are so related to the DTSA claim that they form part of the same case or controversy.

12. This Court has personal jurisdiction over Jones because she resides in Illinois. Further, Jones expressly consented to the jurisdiction of the federal and state courts in Illinois (Confidentiality Agreement, ¶ 11.1) and agreed that any party may petition the court for injunctive relief in an action for breach of the Confidentiality Agreement. (*Id.* at ¶ 12.4.)

13. Venue is proper in this District under 28 U.S.C. § 1391(b) because Jones resides in this District and a substantial part of the events or omissions giving rise to Transcarent's claims occurred in this District.

## FACTS

### A. Transcarent's Business

14. Transcarent operates in a highly competitive market for navigation and care solutions. Transcarent offers an integrated healthcare platform that gives its clients' employees and their families ("Members") a single place to understand and use their health benefits, obtain clinical guidance, and access care. Rather than requiring individuals to navigate separate standalone programs, each with its own login and membership card, Transcarent brings medical care, pharmacy benefits, and specialized care programs together in one experience.

15. Through its proprietary, generative and agentic AI–powered WayFinding® tool, Members are provided a digital front door that unifies their medical, pharmacy, and specialized care programs into one personalized experience. Members can "Just Ask Transcarent" for plan-specific answers, benefits navigation, clinical guidance from nurses and health guides, second opinions, help finding high-quality physicians and lower-cost surgical centers, and 24/7 primary care.

16. Transcarent's services include helping Members find high-quality, in-network providers and understand their benefits and expected costs, so they can make informed care decisions. Transcarent also provides centers of excellence programs and a suite of care experiences, such as muscle and joint health, surgery care, cancer care, weight management, mental health care, second opinions, and pharmacy care, among others.

17. As part of Transcarent's musculoskeletal surgery centers of excellence, Members can access a large network of providers, offering bundled, up-front pricing across surgical categories. Cancer Care provides end-to-end support from detection through survivorship, with centers of excellence and partnerships for bundled, predictable pricing on complex treatments, plus dedicated oncology nurse navigation. 2nd.MD® providers offer second-opinion consultations with leading specialists, and Transcarent's Weight Health includes personalized care connecting lifestyle management, medication, and bariatric surgery pathways through the centers of excellence.

18. Transcarent's clients are self-insured employers, health plans, health systems, and labor unions, which make Transcarent's platform available to their enrollees and dependents.

19. Transcarent has grown significantly since its founding, currently serving more than 1,700 employers, health systems, and health plans that trust Transcarent to support more than 21 million Members.

**B. Transcarent's Protection of Its Confidential Information**

20. Transcarent competes with companies across navigation, advocacy, point solutions, quality-analytics, and provider-steerage.

21. For these reasons, Transcarent's confidential and proprietary information—including its pricing, pricing strategies, and performance-guarantee structures; current and prospective customer and partner proposals; competitive intelligence and competitive positioning; sales strategies and channel partner relationships; product roadmaps and portfolio strategies; member engagement strategies and performance benchmarks; proprietary and customized products, services, and methodologies; product implementation strategies; marketing activities and

strategies; customer information and client-specific performance data; and prospective client pursuits—give it a significant competitive advantage.

22. Transcarent has invested substantial resources in developing its technology and its confidential and proprietary information. This information is not generally known or readily ascertainable through proper means.

23. Transcarent guards its confidential and proprietary information and trade secrets very closely and has implemented safeguards to maintain confidentiality and data security. Transcarent protects its information with robust data security policies governing the handling of confidential information and trade secrets, and it regularly trains its employees on these policies.

24. Among other measures, Transcarent: (a) requires employees to sign confidentiality agreements; (b) stores data in Salesforce, which is secured through multi-factor authentication and role-based permissions, and in secured SharePoint and OneDrive environments that require authorized credentials; (c) restricts access to sensitive information on a need-to-know basis; (d) requires passwords and multi-factor authentication; (e) provides options for users to password-protect highly sensitive documents; (f) monitors data activity through data loss prevention technology that detects and records, via data loss prevention logs, materials printed from Transcarent-issued laptops, files downloaded by employees, and files and documents sent via email, including to employees' personal email accounts; (g) displays a notice when an employee logs onto or restarts a Transcarent-issued computer, advising that Transcarent monitors its devices; and (h) shares certain materials with third parties only under non-disclosure agreements.

25. Transcarent also maintains robust data security policies governing the handling of its confidential information and trade secrets, and it regularly trains employees on those policies.

26. In Transcarent's Code of Conduct and Ethics, employees are instructed that: "You must not reveal or divulge any such information unless it is necessary to do so in the performance of the duties of your role. [...] Your obligation to maintain the confidentiality of this information continues after termination of employment. Any breach of this policy will not be tolerated and may result in disciplinary and/or legal action against the individual responsible for the breach." A true and correct copy of relevant excerpts of the Code of Conduct and Ethics is attached as ***Exhibit B***.

27. Further, Transcarent requires employees to attest annually to the Code of Conduct and Ethics as part of Transcarent's Compliance Training Policy. Jones completed her annual Transcarent Compliance Training, including attesting to the Transcarent Code of Conduct and Ethics, as recently as June 23, 2025. A true and correct copy of Jones' attestation is attached as ***Exhibit C***.

**C. Garner's Business**

28. Garner is a healthcare technology company that competes directly with Transcarent in several core service lines, including provider search and recommendations, provider quality, cost-efficiency analytics, surgical center partners, and care navigation.

29. On information and belief, Garner has expanded into AI-powered health care navigation through its "Garner Assistant," which helps its members find doctors, understand their benefits, see appointment availability, book visits, and receive guidance. These functions overlap with Transcarent's WayFinding® platform.

30. Garner and Transcarent compete for the same clients. Additionally, both employers and benefits consultants evaluating navigation solutions consider them as part of the same competitive set, including in requests for proposals.

## D. Jones' Employment with Transcarent

31. Jones began her employment with Transcarent on March 20, 2023, as a Product Marketing Manager, Oncology & Surgery Care. Her role expanded over time. Beginning in February 2025, she was no longer dedicated exclusively to Oncology & Surgery Care, and her work shifted toward scalable Member marketing packages. In July 2026, she took on broader go-to-market ("GTM") strategy and commercial effectiveness responsibilities across multiple product portfolios.

32. As a Product Marketing Manager, Jones was responsible for helping Transcarent bring its products to market and sell them. Her responsibilities included, among other things: gathering customer feedback to inform Transcarent's product plans; studying competitors' offerings; identifying the types of buyers Transcarent should target; determining how Transcarent's products should be positioned and described to those buyers; developing plans for launching and selling Transcarent's products; explaining the value of Transcarent's products to current and prospective clients; and preparing sales presentations and other materials that Transcarent's sales and account management teams used to win and keep clients.

33. Jones worked closely with Transcarent's product, strategy, clinical, operations, and sales teams, and helped develop client-facing content regarding Transcarent's services.

34. In her role, Jones had access to and knowledge of Transcarent's confidential commercial strategies, pricing, product plans, and current and prospective customer information. This information included, but was not limited to, its pricing, pricing strategies, and pricing proposals; commercial capabilities, products, and services; member engagement strategies; current customer business reviews; pitch materials prepared for prospective clients; and market research regarding its competitors and competitive advantage.

35. Additionally, Jones was intimately familiar with, and directly involved in, creating some of Transcarent's most sensitive and highly confidential information about its competitors and how Transcarent competes against them. Jones prepared competitive analyses of Transcarent's competitors, including Garner, and used those analyses as well as competitive intelligence on pricing, positioning, strengths, and weaknesses to develop training materials for the teams involved in Transcarent's commercial activities, including Transcarent's sales, marketing, and account management teams.

**E. Jones' Confidentiality Agreement with Transcarent**

36. As a condition of Jones' employment with Transcarent, Jones executed the Confidentiality Agreement on March 6, 2023.

37. The Confidentiality Agreement defined "Confidential Information" to include, among other things, non-public information related to Transcarent's business, its current, future, and proposed products, projects, and services, business processes, customer lists and customers, markets, marketing and marketing plans, statistical data, research, finances, and other business information. Ex. A, Confidentiality Agreement, ¶ 2.1.

38. Jones acknowledged that her position gave her access to and knowledge of Confidential Information and placed her in a position of trust and confidence with Transcarent, and that improper use or disclosure of Confidential Information by her is likely to result in unfair or unlawful competitive activity. *Id.* at ¶ 3.

39. Jones agreed to hold Transcarent's confidential information in strictest confidence as follows:

> 2.1 Company Confidential Information. I agree at all times during the term of my employment and thereafter, to hold in strictest confidence, and not to use, except for the benefit of the Company, or to disclose to any person, firm or corporation without written authorization of an authorized officer of the Company, any Confidential Information of the Company, its executives, subsidiaries, affiliates, successors or assigns ("Company Affiliates"). I understand that "Confidential Information"

*Id.* at ¶ 2.1.

40. Further, Jones agreed to confidentiality obligations related to confidential and proprietary information received by Transcarent from third parties, including its customers:

> 2.3 Third Party Information. I recognize that the Company has received and in the future will receive from third parties (for example, customers, suppliers, licensors, licensees, partners, collaborators) as well as its subsidiaries and affiliates ("Associated Third Parties"), their confidential or proprietary information subject to a duty on the Company's part to maintain the confidentiality of such Associated Third Parties information and to use it only for certain limited purposes ("Associated Third Party Confidential Information"). I agree to hold all such Associated Third Party Confidential Information confidential or proprietary information in the strictest confidence and not to disclose it to any person, firm or corporation or to use it except as necessary in carrying out my work for the Company consistent with the Company's agreement with such Associated Third Parties. I agree at all times during my employment with the Company and thereafter, that I owe the Company and its Associated Third Parties a duty to hold all such Associated Third Party Confidential Information in the strictest confidence, and not to use it or to disclose it to any person, firm, corporation, or other third party except as necessary in carrying out my work for the Company consistent with the Company's agreement with such Associated Third Parties. I further agree to comply with any and all Company policies and guidelines that may be adopted from time to time regarding Associated Third Parties and Associated Third Party Confidential Information. I understand that my unauthorized use or disclosure of Associated Third Party Confidential Information or violation of any Company policies during my employment may lead to disciplinary action, up to and including, immediate termination and legal action by the Company.

*Id.* at ¶ 2.3.

41. Jones also agreed to certain obligations regarding returning Transcarent's property as follows:

> 8. **Returning Company Documents**. I agree that, at the time of leaving the employ of the Company for any reason, I will deliver to the Company (and will not keep in my possession, recreate or deliver to anyone else) any and all devices (including computers, external storage devices, thumb drives, mobile devises, tablets, e-readers and the like), records, data, notes, reports, proposals, lists, correspondence, specifications, drawings blueprints, sketches, materials, equipment, other documents or property, or reproductions of any aforementioned items developed by me pursuant to my employment with the Company or otherwise belonging to the Company, its successors or assigns.

*Id.* at ¶ 8.

42. Finally, Jones consented to Transcarent notifying her new employer of her obligations under the Confidentiality Agreement:

> 9. **Notification to New Employer**. In the event that I leave the employ of the Company, I hereby grant consent to notification by the Company to my new employer about my rights and obligations under this Agreement.

*Id.* at ¶ 9.

43. Jones agreed that her obligations under the Confidentiality Agreement that are intended to be fulfilled post-employment, including her confidentiality obligations, survive the termination of her employment. *Id.* at ¶ 11.3.

**F. Jones Downloads Transcarent's Confidential Information Before Resigning and Joining Garner**

44. Jones voluntarily separated from employment with Transcarent, effective September 25, 2026.

45. On or before August 27, 2026, Jones informed Transcarent that she had received an offer of employment from Garner. She had not yet accepted it, and she asked whether accepting it would conflict with her Confidentiality Agreement.

46. On August 27, 2026, Jones resigned from Transcarent, with an effective date of September 25, 2026. Transcarent reminded Jones that her confidentiality and return-of-property obligations would continue after her employment ended. A true and correct copy of Jones' resignation and the reminder of confidentiality obligations email is attached as ***Exhibit D***. In the week after her last day, Jones announced on LinkedIn that she had started working for Garner as a Product Marketing Lead.

47. Given the reminder she recently received regarding Transcarent's confidential information and her confidential obligations, Transcarent had no reason to believe that she would take or had taken any steps to harm Transcarent or otherwise violate her obligations to Transcarent.

48. However, in light of the highly confidential and proprietary information to which Jones had access during her employment, Transcarent performed a forensic investigation of its data to confirm that Jones had not retained or disclosed any of its confidential information and trade secrets prior to her departure.

49. In the course of that process, Transcarent learned that, on September 14, 2026, and again on September 21 and 22, 2026, Jones downloaded numerous files containing Transcarent's most sensitive confidential and proprietary information and trade secrets to a personal Apple device.

50. Transcarent has thus far determined that Jones downloaded at least twenty-five documents.

51. Two of those files were downloaded from Jones' own OneDrive account. Jones accessed and downloaded the remainder of files from secure SharePoint sites and from OneDrive accounts of other Transcarent employees, including: the Chief of Staff; the Commercial Chief of Staff; the Chief Strategy Officer; the VP, Consultant Relations; the VP, National Sales; the VP, Partnerships; the VP, Enterprise Sales; the Senior Director, Solutions – Weight Health; the Director, Product Marketing; and the Sr. Account Manager, Client Success.

52. The files Jones downloaded include, among other things:[1]

a. Pricing proposals and proposal templates setting out Transcarent's per-employee-per-month platform fees, per-episode care fees, case-management fees and caps, implementation fees, discounts, minimum annual fees, and contract terms, as well as a password-protected commercial price book containing a catalogue of Transcarent's products and services;

b. Transcarent's member engagement playbook, which details its strategies for driving member activation and engagement and contains proprietary performance benchmarks, book-of-business statistics, and client case studies;

[1] Because some of the files Jones downloaded include the names of current and prospective customers, Transcarent does not identify the files by name in this Complaint. To the extent necessary, Transcarent will identify the files to the Court under seal or subject to an appropriate protective order.

c. Presentations and pre-read materials prepared for large prospective clients in active competitive evaluations, including materials containing prospect-specific savings projections, return-on-investment modeling, and integration plans;

d. A current Transcarent client's annual business review containing that client's program performance results, savings figures, and claims-based analyses, as well as materials prepared for Transcarent's broker and channel partners, including partner-specific pricing;

e. A proposal template for Transcarent's care navigation offering, including its pricing and a time-limited competitive pricing offer designed to displace a competing vendor;

f. Commercial and capabilities presentations for Transcarent's weight health, cardiometabolic health, MSK, and surgery care offerings, including program pricing mechanics, pharmacy pricing, provider network and bundled pricing approaches, and savings models;

g. Internal product and competitive strategy materials, including a confidential future-state strategy for Transcarent's weight health portfolio analyzing competitors and potential partners, and an internal sales-packaging presentation containing a pricing and performance-guarantee "cheat sheet," Transcarent's positioning against named competitors (including Garner), and guidance for responding to objections raised in competition with them;

h. A strategic partnership proposal containing Transcarent's technical integration architecture, implementation timeline, governance structure, competitive comparisons, and pricing strategy;

i. Internal templates and instructions for preparing client business reviews and implementation presentations, which identify the internal sources and methods Transcarent uses to compile client performance data;

j. An internal working draft of Transcarent's capabilities presentation for benefits consultants, including the number of clients Transcarent shares with particular consulting firms, notable client names, its product roadmap, and internal notes on consultant-meeting strategy; and

k. Internal marketing performance reports, including marketing objectives and key results, demand-generation results, and marketing-sourced and marketing-influenced sales pipeline figures.

53. Jones had no legitimate business reason to download these files to a personal Apple device at any time, much less in the days immediately preceding her departure from Transcarent.

54. Transcarent took reasonable efforts to maintain the secrecy of these materials, and the information contained in these documents is not generally known outside of Transcarent's and its clients' businesses, is valuable, and gives Transcarent a competitive advantage, such that the unauthorized use or disclosure of these materials would significantly harm Transcarent and potentially its clients.

55. The taking of the above materials is made more egregious by the fact that within one week after her employment ended, Jones began working for Garner.

56. Jones did not return the downloaded files to Transcarent when her employment ended, as required by Section 8 of the Confidentiality Agreement.

57. On information and belief, Jones holds a position at Garner that is the same as or substantially similar to the position she held at Transcarent.

58. On information and belief, Jones disclosed Transcarent's confidential and proprietary information to Garner.

59. On information and belief, Garner is competing, or will compete, with Transcarent for the same clients for which Jones downloaded Transcarent's confidential pitch materials.

60. Thus, Defendants will inevitably use Transcarent's confidential and proprietary information unlawfully retained by Jones for Garner's benefit. In fact, on information and belief, Jones already has used materials described above on behalf of Garner and/or has shared these materials with Garner.

**G. Transcarent Faces Immediate and Irreparable Harm**

61. Taken together, the files Jones downloaded are a blueprint for Transcarent's business. They provide an inside view into Transcarent's commercial and business strategies. They amount to a playbook for competing against Transcarent and for replicating its business, including aspects of that business in which a competitor is not currently involved, without the time, investment, and experience it took Transcarent to build them.

62. The information Jones downloaded and retained would allow a competitor like Garner to undercut Transcarent's pricing, replicate its proposals and engagement strategies, and target its current and prospective customers, including in pending competitive pursuits.

63. Jones' blatant misappropriation has directly and proximately caused, and unless Defendants are enjoined, will continue to cause, immediate and irreparable harm to Transcarent, including the loss of its trade secrets, competitive position, customer relationships, and goodwill, for which money damages alone are not an adequate remedy.

64. Jones understood and agreed that violations of her obligations under the Confidentiality Agreement, including her confidentiality, non-disclosure, and return of property

obligations, would cause irreparable harm and that money damages would not provide an adequate remedy to Transcarent. Ex. A, Confidentiality Agreement, ¶¶ 10, 12.4.

65. Jones' conduct was wanton, willful, and malicious.

66. Transcarent's forensic investigation is ongoing and may reveal additional misappropriated information or other misconduct.

## CAUSES OF ACTION

### COUNT I - Misappropriation of Trade Secrets in Violation of the Defend Trade Secrets Act (Against Both Defendants)

67. Transcarent realleges and incorporates by reference the allegations in Paragraphs 1 through 66 as if fully set forth herein.

68. The Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836(b)(1), creates a private right of action for "[a]n owner of a trade secret that is misappropriated…if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce."

69. The DTSA defines "trade secret" as information that "derives economic value from not being generally known to or readily ascertainable through proper means by another person, and that is subject to reasonable efforts to maintain its secrecy."

70. Transcarent possesses highly confidential trade secrets protected by the DTSA, including but not limited to: pricing, pricing strategies, and performance-guarantee structures; current and prospective customer and partner proposals; competitive intelligence and competitive positioning; sales strategies and channel partner relationships; product roadmaps and portfolio strategies; member engagement strategies and performance benchmarks; proprietary and customized products, services, and methodologies; product implementation strategies; marketing

activities and strategies; customer information and client-specific performance data; and prospective client pursuits.

71. Transcarent is the owner of these trade secrets because it has the rightful title to the trade secrets, having developed and protected them as described above.

72. As described above, Transcarent has taken and continues to take reasonable steps to maintain the secrecy of these trade secrets. These trade secrets have independent economic value; and Transcarent's trade secrets are not generally known or readily ascertainable by other persons who could obtain economic value from their disclosure or use.

73. The DTSA defines "misappropriation" to include the "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means" or the "disclosure or use of a trade secret of another without express or implied consent" in specified circumstances.

74. As a Marketing professional, Jones had access to and regularly used Transcarent's highly confidential and proprietary data and information during her employment with Transcarent.

75. Jones acquired Transcarent's trade secrets by improper means during her employment by downloading files from SharePoint and OneDrive to a personal Apple device in the days leading up to her last day of employment with Transcarent.

76. Jones has not returned to Transcarent the files she downloaded.

77. By unlawfully taking and retaining Transcarent's confidential and proprietary information, Jones has improperly obtained the trade secrets, thus misappropriating such information in violation of the DTSA.

78. These actions, taken together, demonstrate actual misappropriation by Jones.

79. On information and belief, Jones' employment with Garner will inevitably lead to the disclosure of Transcarent's trade secrets, including the files she improperly downloaded and retained.

80. On information and belief, Jones has shared Transcarent's confidential information and trade secrets with Garner.

81. On information and belief, Jones has used Transcarent's confidential information and trade secrets on Garner's behalf. This belief is based on, among other things: (a) the targeted and extensive nature of the files Jones downloaded to a personal Apple electronic device with no business justification for doing so; (b) the fact that most of these files were not maintained in Jones' own work folders and were instead pulled from Transcarent's secured SharePoint sites and the OneDrive accounts of numerous other employees; and (c) the short period of time between Jones' resignation from Transcarent and her commencement of employment with Garner, a direct competitor of Transcarent.

82. Jones' conduct was and is wanton, willful, and malicious.

83. On information and belief, Garner is knowingly benefiting from Jones' use and/or disclosure of Transcarent's confidential information and trade secrets.

84. On information and belief, Garner's conduct in knowingly benefiting from Jones' use and/or disclosure of Transcarent's confidential information and trade secrets was and is wanton, willful, and malicious.

85. These acts of misappropriation or misuse have directly and proximately caused and will continue to cause substantial damage to Transcarent.

86. In addition to actual damages, Transcarent is entitled to preliminary and permanent injunctive relief (a) enjoining Jones from disclosing or transmitting any of Transcarent's trade

secrets or confidential information to Garner; (b) enjoining Defendants from using Transcarent's trade secrets or confidential information for any purpose; (c) requiring Jones and Garner to submit their devices and files for forensic investigation at their expense to determine the full extent of Transcarent's confidential information in their respective possession, custody, and control; (d) requiring Jones, and Garner as applicable, to immediately return to Transcarent all documents, files, and other materials containing Transcarent's trade secrets and confidential information; (e) requiring Jones, and Garner as applicable, to permanently delete and destroy any copies of such documents or information in their possession, custody, or control, including any copies stored on personal devices, email accounts, cloud storage, company servers or devices, or any other medium and (f) requiring Defendants to certify in writing, under oath, that they have complied with the foregoing.

87. Transcarent is also entitled to the imposition of a constructive trust on the proceeds of any exploitation of products, intellectual property, or services based on, derivative of, or otherwise using Transcarent's trade secrets.

WHEREFORE, Transcarent prays for judgment against Defendants awarding preliminary and permanent injunctive relief, damages plus interest and costs, and for such other and further relief as this Court deems just, fair, and equitable, or to compel the parties to arbitration to determine damages.

**COUNT II - Misappropriation of Trade Secrets in Violation of the Illinois Trade Secrets Act**
**(Against Both Defendants)**

88. Transcarent realleges and incorporates by reference the allegations in Paragraphs 1 through 87 as if fully set forth herein.

89. The Illinois Trade Secrets Act ("ITSA"), 765 ILCS 1065/1 *et seq.*, creates a private right of action permitting the owner of a trade secret to recover damages for the misappropriation of trade secrets.

90. The ITSA defines "trade secret" as information that "is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use" and "is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality."

91. Transcarent possesses highly confidential information that constitute trade secrets, including but not limited to: pricing, pricing strategies, and performance-guarantee structures; current and prospective customer and partner proposals; competitive intelligence and competitive positioning; sales strategies and channel partner relationships; product roadmaps and portfolio strategies; member engagement strategies and performance benchmarks; proprietary and customized products, services, and methodologies; product implementation strategies; marketing activities and strategies; customer information and client-specific performance data; and prospective client pursuits.

92. Transcarent is the owner of these trade secrets because it has the rightful title to the trade secrets, having developed and protected them as described above.

93. As described above, Transcarent has taken and continues to take reasonable steps to maintain the secrecy of these trade secrets. These trade secrets have independent economic value; and Transcarent's trade secrets are not generally known or readily ascertainable by other persons who could obtain economic value from their disclosure or use.

94. The ITSA defines "misappropriation" to include the "acquisition of a trade secret of a person by another person who knows or has reason to know that the trade secret was acquired

by improper means" or the "disclosure or use of a trade secret of a person without express or implied consent" in specified circumstances.

95. As a Marketing professional, Jones had access to and regularly used Transcarent's highly confidential and proprietary data and information during her employment with Transcarent.

96. Jones acquired Transcarent's trade secrets by improper means during her employment by downloading files from SharePoint and OneDrive to a personal Apple electronic device in the days leading up to her last day of employment with Transcarent.

97. Jones has not returned to Transcarent the files she downloaded.

98. By unlawfully taking and retaining Transcarent's confidential and proprietary information, Jones has improperly obtained the trade secrets, thus misappropriating such information in violation of the ITSA.

99. These actions, taken together, demonstrate actual misappropriation by Jones.

100. On information and belief, Jones' employment with Garner will inevitably lead to the disclosure of Transcarent's trade secrets, including the files she improperly downloaded and retained.

101. On information and belief, Jones has shared Transcarent's confidential information and trade secrets with Garner.

102. On information and belief, Jones has used Transcarent's confidential information and trade secrets on Garner's behalf. This belief is based on, among other things: (a) the targeted and extensive nature of the files Jones downloaded to a personal Apple electronic device with no business justification for doing so; (b) the fact that most of these files were not maintained in Jones' own work folders and were instead pulled from Transcarent's secured SharePoint sites and the OneDrive accounts of numerous other employees; and (c) the short period of time between Jones'

resignation from Transcarent and her commencement of employment with Garner, a direct competitor of Transcarent.

103. Jones' conduct was and is wanton, willful, and malicious.

104. On information and belief, Garner is knowingly benefiting from Jones' use and/or disclosure of Transcarent's confidential information and trade secrets.

105. On information and belief, Garner's conduct in knowingly benefiting from Jones' use and/or disclosure of Transcarent's confidential information and trade secrets was and is wanton, willful and malicious.

106. These acts of misappropriation or misuse have directly and proximately caused and will continue to cause substantial damage to Transcarent.

107. In addition to actual damages, Transcarent is entitled to preliminary and permanent injunctive relief (a) enjoining Jones from disclosing or transmitting any of Transcarent's trade secrets or confidential information to Garner; (b) enjoining Defendants from using Transcarent's trade secrets or confidential information for any purpose; (c) requiring Jones and Garner to submit their devices and files for forensic investigation at their expense to determine the full extent of Transcarent's confidential information in their respective possession, custody, and control; (d) requiring Jones, and Garner as applicable, to immediately return to Transcarent all documents, files, and other materials containing Transcarent's trade secrets and confidential information; (e) requiring Jones, and Garner as applicable, to permanently delete and destroy any copies of such documents or information in their possession, custody, or control, including any copies stored on personal devices, email accounts, cloud storage, company servers or devices, or any other medium and (f) requiring Defendants to certify in writing, under oath, that they have complied with the foregoing.

108. Transcarent is also entitled to the imposition of a constructive trust on the proceeds of any exploitation of products, intellectual property, or services based on, derivative of, or otherwise using Transcarent's trade secrets.

WHEREFORE, Transcarent prays for judgment against Defendants awarding permanent injunctive relief, damages plus interest and costs, and for such other and further relief as this Court deems just, fair, and equitable, or to compel the parties to arbitration to determine damages.

**COUNT III – Breach of Contract**
**(Against Jones)**

109. Transcarent realleges and incorporates by reference the allegations in Paragraphs 1 through 108 as if fully set forth herein.

110. Jones entered into the Confidentiality Agreement, which constitutes a valid and enforceable contract supported by adequate consideration, including Jones' compensation as a Transcarent employee and her receipt of confidential information and trade secrets.

111. In the Confidentiality Agreement, Jones agreed to confidentiality, non-disclosure, and return of property obligations. Specifically, pursuant to Section 2.1 of the Confidentiality Agreement, Jones agreed, at all times during her employment and thereafter, to hold in strictest confidence, and not to use, except for the benefit of Transcarent, or to disclose such information without Transcarent's written authorization.

112. Pursuant to Section 2.3 of the Confidentiality Agreement, Jones further agreed, during her employment and thereafter, to hold in the strictest confidence any confidential or proprietary information that Transcarent received from third parties and not to use or disclose such information except as necessary to carry out her work for Transcarent.

113. Pursuant to Section 8 of the Confidentiality Agreement, Jones agreed that, upon leaving her employment with Transcarent for any reason, she would return its property without retaining copies.

114. Jones' contractual breaches include downloading, retaining, and failing to return Transcarent's confidential and proprietary information (as described in Paragraphs 52(a)-(k), *supra*) following her separation from employment.

115. Transcarent has performed all of its obligations under the Confidentiality Agreement, including employing and compensating Jones and providing her access to its Confidential Information. As a direct and proximate result of Jones' breaches, Transcarent has suffered and will continue to suffer damages, and it is entitled to recover its reasonable attorneys' fees and costs under Paragraphs 10 and 12.4 of the Confidentiality Agreement.

116. In addition to actual damages, Transcarent is entitled to preliminary and permanent injunctive relief (a) enjoining Jones from disclosing or transmitting any of Transcarent's trade secrets or confidential information to Garner; (b) enjoining Defendants from using Transcarent's trade secrets or confidential information for any purpose; (c) requiring Jones and Garner to submit their devices and files for forensic investigation at their expense to determine the full extent of Transcarent's confidential information in their respective possession, custody, and control; (d) requiring Jones, and Garner as applicable, to immediately return to Transcarent all documents, files, and other materials containing Transcarent's trade secrets and confidential information; (e) requiring Jones, and Garner as applicable, to permanently delete and destroy any copies of such documents or information in their possession, custody, or control, including any copies stored on personal devices, email accounts, cloud storage, company servers or devices, or any other medium

and (f) requiring Defendants to certify in writing, under oath, that they have complied with the foregoing.

WHEREFORE, Transcarent prays for judgment against Jones awarding permanent injunctive relief, damages plus interest and costs, and for such other and further relief as this Court deems just, fair, and equitable, or to compel the parties to arbitration to determine damages.

**COUNT IV – Unjust Enrichment**
**(Against Both Defendants – Pled in the Alternative)**

117. Transcarent pleads this count in the alternative.

118. Transcarent realleges and incorporates by reference the allegations in Paragraphs 1 through 116 as if fully set forth herein.

119. On information and belief, Defendants are using and/or have received the benefit of using Transcarent's confidential and proprietary information and trade secrets for their own use and benefit and to Transcarent's detriment. This belief is based on, among other things, (a) the nature of the files Jones downloaded in the days before her employment with Transcarent ended, which included Transcarent's enterprise-wide price book, pricing proposals, member engagement strategies, current customer business reviews, and pitch materials for prospective clients Transcarent is actively pursuing; and (b) the short period of time between Jones' resignation from Transcarent and her commencement of employment with Garner, a direct competitor of Transcarent for the same employer clients and benefits consultants.

120. Allowing Defendants to retain the value of the trade secrets misappropriated by Jones, including any benefit conferred on Garner as a result of that misappropriation, would be unjust and inequitable, and would violate fundamental principles of justice, equity, and good conscience.

121. Defendants are liable to Transcarent for the benefits they received and continue to receive.

WHEREFORE, Transcarent prays for judgment against Defendants awarding permanent injunctive relief, damages plus interest and costs, and for such other and further relief as this Court deems just, fair, and equitable, or to compel the parties to arbitration to determine damages.

**COUNT V – Civil Conspiracy**
**(Against Both Defendants – Pled in the Alternative)**

122. Transcarent pleads this count in the alternative.

123. Transcarent realleges and incorporates by reference the allegations in Paragraphs 1 through 121 as if fully set forth herein.

124. On information and belief, Defendants agreed and acted tortiously and in concert to misappropriate and use Transcarent's confidential and proprietary information and trade secrets in violation of Jones' obligations under the Confidentiality Agreement. This belief is based on, among other things (a) the targeted and extensive nature of the files Jones downloaded to a personal Apple electronic device with no business justification for doing so; (b) the specific files Jones downloaded, which included Transcarent's enterprise-wide price book, pricing proposals, member engagement strategies, current customer business reviews, and pitch materials for prospective clients Transcarent is actively pursuing; and (c) the short period of time between Jones' resignation from Transcarent and her commencement of employment with Garner, a direct competitor of Transcarent for the same employer clients and benefits consultants.

125. On information and belief, Garner was aware that Jones' conduct breached her contractual obligations to Transcarent.

126. On information and belief, Garner gave substantial assistance and encouragement to Jones in violating those obligations.

127. On information and belief, Defendants committed one or more overt tortious and unlawful acts in furtherance of this agreement, including unlawfully retaining, disclosing, and/or using Transcarent's confidential and proprietary information and trade secrets.

128. As a consequence of Defendants' wrongdoing, each of Jones and Garner is liable for the misconduct of the other.

WHEREFORE, Transcarent prays for judgment against Defendants awarding permanent injunctive relief, damages plus interest and costs, and for such other and further relief as this Court deems just, fair, and equitable, or to compel the parties to arbitration to determine damages.

**COUNT VI – Breach of Fiduciary Duty/Duty of Loyalty**
**(Against Jones – Pled in the Alternative)**

129. Transcarent pleads this count in the alternative.

130. Transcarent realleges and incorporates by reference the allegations in Paragraphs 1 through 128 as if fully set forth herein.

131. During her employment with Transcarent, Jones owed fiduciary duties, including duties of loyalty, fidelity, and good faith, to Transcarent as a term of the employment relationship.

132. Pursuant to Section 3 of the Confidentiality Agreement, Jones agreed that the nature of her position with Transcarent gave her access to and knowledge of its confidential information and thus, placed Jones in a position of trust and confidence.

133. Jones' fiduciary duties to Transcarent required her to act in Transcarent's best interests, to refrain from taking actions adverse to Transcarent's interests, and to refrain from using her position with Transcarent to benefit herself or a competitor at Transcarent's expense, among other related duties.

134. Jones breached her duty of loyalty during her employment by, among other things, downloading, retaining, and on information and belief, disclosing to Garner, files containing Transcarent's highly sensitive confidential and proprietary information and trade secrets.

135. Such acts by Jones were taken in direct contravention of her duty to remain faithful to Transcarent's interests throughout the term of her employment.

136. As a direct and proximate result of Jones' breaches, Transcarent has suffered and continues to suffer damages, including monetary damages.

137. Jones' breaches, as described above, were willful, wanton, and malicious, thereby warranting an award of punitive damages to Transcarent.

WHEREFORE, Transcarent prays for judgment against Jones awarding permanent injunctive relief, damages plus interest and costs, and for such other and further relief as this Court deems just, fair, and equitable.

**COUNT VII– Tortious Interference with Contractual Relations**
**(Against Garner – Pled in the Alternative)**

138. Transcarent pleads this count in the alternative.

139. Transcarent realleges and incorporates by reference the allegations in Paragraphs 1 through 137 as if fully set forth herein.

140. Jones has an existing, valid, and enforceable contractual relationship with Transcarent, via the Confidentiality Agreement.

141. On information and belief, Garner is aware of the Confidentiality Agreement, which is valid and enforceable, and contains provisions prohibiting Jones' use, disclosure, and retention of Transcarent's confidential and proprietary information and trade secrets after her employment with Transcarent ended.

142. On information and belief, Garner intentionally and unjustifiably interfered with Jones' contractual obligations under the Confidentiality Agreement and procured the breach of the Confidentiality Agreement by Jones.

143. As a direct and proximate result of, on information and belief, Garner's interference, Jones breached the Confidentiality Agreement, including by downloading, retaining, and failing to return Transcarent's confidential and proprietary information (as described in Paragraphs 52(a)-(k), *supra*) following her separation from employment.

144. As a direct and proximate result of, on information and belief, Garner's interference, Transcarent has suffered and will continue to suffer substantial damages.

145. On information and belief, Garner's interference was wanton, willful, and malicious, and was done with actual malice, warranting the imposition of punitive damages.

WHEREFORE, Transcarent prays for judgment against Garner awarding permanent injunctive relief, damages plus interest and costs, for such other and further relief as this Court deems just, fair, and equitable, or to compel the parties to arbitration to determine damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Transcarent, Inc. respectfully requests that this Court enter judgment in its favor and against Defendants and:

(i) Issue preliminary and permanent injunctive relief (a) enjoining Jones from disclosing or transmitting any of Transcarent's trade secrets or confidential information to Garner; (b) enjoining Defendants from using Transcarent's trade secrets or confidential information for any purpose; (c) requiring Jones and Garner to submit their devices and files for forensic investigation at their expense to determine the full extent of Transcarent's confidential information in their

respective possession, custody and control; (d) requiring Jones, and Garner as applicable, to immediately return to Transcarent all documents, files, and other materials containing Transcarent's trade secrets and confidential information; (e) requiring Jones, and Garner as applicable, to permanently delete and destroy any copies of such documents or information in their possession, custody, or control, including any copies stored on personal devices, email accounts, cloud storage, company servers or devices, or any other medium; and (f) requiring Defendants to certify in writing, under oath, that they have complied with the foregoing;

(ii) Award Transcarent compensatory damages, including actual damages and damages for unjust enrichment, or, alternatively, a reasonable royalty, in an amount to be proven at trial or compel the parties to arbitration to determine damages;

(iii) Impose a constructive trust on the proceeds of any exploitation of products, intellectual property, or services based on, derivative of, or otherwise using Transcarent's trade secrets, in an amount to be determined at trial or compel the parties to arbitration to determine damages;

(iv) Award Transcarent exemplary damages for Defendants' willful and malicious misappropriation under the DTSA and/or ITSA, and punitive damages as permitted by law or compel the parties to arbitration to determine damages.

(v) Award Transcarent its reasonable attorneys' fees and costs under the DTSA, the ITSA, and/or Paragraphs 10 and 12.4 of the Confidentiality Agreement;

(vi) Award Transcarent pre-judgment and post-judgment interest or compel the parties to arbitration to determine damages; and

(vii) Award Transcarent such other and further relief, in law and in equity, as the Court deems just and proper.

Dated: October 16, 2026

Respectfully submitted,

TRANSCARENT, INC.

/s/ *Julie C. Webb*

One of Its Attorneys

Julie C. Webb
Amar N. Shabeeb
Troutman Pepper Locke LLP
225 W. Randolph Street, Suite 2600
Chicago, Illinois 60606
(312) 443-0404
(312) 759-5939
julie.webb@troutman.com
amar.shabeeb@troutman.com

Tracey E. Diamond (PHV motion forthcoming)
TROUTMAN PEPPER LOCKE LLP
104 Carnegie Center, Suite 203
Princeton, NJ 08540-6227
(609) 951-4235
tracey.diamond@troutman.com

Akilah F. Craig (PHV motion forthcoming)
TROUTMAN PEPPER LOCKE LLP
600 Travis Street, Suite 2800
Houston, Texas 77002
(713) 226-1200
akilah.craig@troutman.com